UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

RAYMOND CALVIN WOOTEN and
KATHY RIDDLE WOOTEN,     No. 19-11152-t11

    Debtors.

# OPINION

Before the Court is Coyote Cabling, LLC's motion to allow it to file a late claim. The Court held an evidentiary hearing on the motion on April 8, 2020, and finds that Coyote Cabling did not receive notice of the bankruptcy case until well after the claims bar date. The motion therefore is well taken and will be granted.

## I. FACTS

The Court finds: [1]

For many years Raymond Wooten was an owner, officer, and director of Wooten Construction, a successful construction company in Las Cruces, New Mexico. Raymond Wooten was influential and well respected in the community. In 2005, he sold the company to his son Kenneth Wooten. Thereafter, Raymond Wooten remained involved in the business as an estimator, job bidder, and advisor.

---

[1] The Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

Coyote Cabling installs low voltage cabling for security systems, fire alarms, public address systems, and the like. Bret Off owns 90% of Coyote Cabling. He has been in business for more than 25 years. Mr. Off grew up in a family business, earned an electrical engineering degree, and participates in continuing business education classes. He is a fairly sophisticated businessman. In the past Mr. Off has encountered some debt collection problems, but this is his first experience with a bankruptcy.

Wooten Construction was one of Coyote Cabling's biggest customers. Over the years, Wooten Construction hired Coyote Cabling as a first or second tier subcontractor on construction projects of all sizes, including large projects at schools and courthouses. The job that led to the claim at issue was a remodeling project at New Mexico State University (NMSU) in 2015. Wooten Construction was the general contractor for the job and hired Coyote Cabling to "upfit" the university's sports facilities so ESPN could broadcast games from NMSU's football stadium. Wooten Construction owes Coyote Cabling about $82,000 for its work on the NMSU remodeling job. Based on Coyote Cabling's history with Wooten Construction and Raymond Wooten's reputation, Mr. Off trusted that Wooten Construction would pay Coyote Cabling eventually and did not aggressively attempt to collect the debt. Additionally, Raymond and Kenneth Wooten both assured Mr. Off that the debt would be paid.

Coyote Cabling's street address is 742 W Palms,[2] Las Cruces, NM 88007. The U.S. Postal Service delivers mail directed to that address to a multi-unit mailbox about a quarter of a mile away. Coyote Cabling's office manager, Nicolette Thornbock, is responsible for retrieving the mail from the box and sorting it. Except for trade magazines, she does not have authority to discard

---

[2] Apparently the street name does not include "road," "drive," "street," etc. It is just West Palms or W Palms.

any mail, including junk mail. If there are pieces of mail that do not relate to Ms. Thornbock's office management responsibilities, she sets them aside for Mr. Off's review.

For reasons unknown to Coyote Cabling, the postal service does not reliably deliver Coyote Cabling's mail directed to the W Palms street address. The unreliable mail service affected Coyote Cabling's business starting in about October 2018. Coyote Cabling introduced evidence that it did not receive mail, including customer checks, between October 2018 and October 2019. The customers included the City of Las Cruces, Las Cruces Public Schools, a construction company, a college, and Doña Ana County. The missing checks from these and other customers were never cashed by a third party or returned to the sender—they seem, simply, to have been lost in the mail.

Evidence showed that Coyote Cabling had to ask for checks to be reissued, often at the cost of stop-payment fees. One customer, frustrated by the mail problem, sent a certified letter to Coyote Cabling's street address. The certified letter was never delivered.

Mr. Off's attempts to fix the mail delivery problem were never met with success. He therefore opened a post office box for Coyote Cabling in June 2019.

Debtors filed this chapter 11 case on May 16, 2019. They listed Coyote Cabling as one of their 20 largest creditors. Coyote Cabling, with the W Palms street address, is on the official mailing matrix in this case and has been since the beginning.

On May 17, 2019, the Bankruptcy Noticing Center mailed notice of the case to Coyote Cabling at its street address. Coyote Cabling did not receive the notice. Because of that, Coyote Cabling did not update its address when it opened the post office box, so all bankruptcy notices continued to be sent to Coyote Cabling's street address.

On July 2, 2019, Debtors' counsel mailed notice of the deadline to file proofs of claim (August 16, 2019) to all parties. Coyote Cabling was included in this mailing, again using the street address. Coyote Cabling did not receive the notice and did not file a proof of claim.

On December 2, 2019, Debtors filed a chapter 11 reorganization plan and disclosure statement. The Court approved the disclosure statement on January 13, 2020. On January 16, 2020, Debtors' counsel mailed copies of the plan, disclosure statement, ballot, and other documents to the mailing matrix. Unlike the prior mailings in the case, Coyote Cabling received the packet on January 23, 2020. Mr. Off promptly called his local attorney, who referred him to bankruptcy counsel. Coyote Cabling decided not to object to plan confirmation. Instead, on February 12, 2020, Coyote Cabling filed the motion to allow a late-filed claim.

## II. DISCUSSION

A.  The Mailbox Presumption.

"In the common law, 'proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.'" *In re Sunland, Inc.*, 536 B.R. 920, 926 (Bankr. D.N.M. 2015) (quoting *Hagner v. U.S.*, 285 U.S. 427, 430, (1932)). As the U.S. mail is not an infallible system of delivery, the mailbox presumption may be rebutted by credible evidence that the mail was not received. *See, e.g., Rosenthal v. Walker*, 111 U.S. 185, 193–94 (1884) (the mailbox presumption "is not a conclusive presumption of law, but a mere inference of fact" that may be overcome by evidence of nonreceipt); *In re Ransom*, 599 B.R. 791, 807 (Bankr. W.D. Pa. 2019) (once the presumption arises, "the party challenging the presumption of receipt must present credible evidence demonstrating that the mailing was not in fact received"). When a party's denial of receipt is supported by evidence, the issue becomes one of fact to be resolved based on the strength of the

evidence and the credibility of the witnesses. *Witt v. Roadway Exp.*, 136 F.3d 1424, 1430 (10th Cir. 1998) ("Because the [mailbox] presumption is rebuttable…evidence denying receipt creates a credibility issue that must be resolved by the trier of fact."); *Rosenthal*, 111 U.S. at 194 (a jury should decide whether letters were actually received when evidence to the contrary exists).

Here, substantial evidence supports, and no evidence refutes, Mr. Off's testimony that Coyote Cabling did not receive notice of this bankruptcy case until January 23, 2020. Mr. Off was a credible witness. His evidence of general mail delivery problems at Coyote Cabling's street address was credible and uncontradicted. The Court finds that Coyote Cabling overcame the mailbox presumption and proved that it did not receive notice of the case, let alone the bar date, until January 23, 2020.

B.     Bankruptcy Rule 9006(b)(1).

Fed. R. Bankr. P. 9006(b)(1) provides:

Except as provided in paragraphs (2) and (3) of this subdivision,[3] when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Rule 9006(b)(1) "permits the court, under limited circumstances, to enlarge the time period for doing an act…even if the request for enlargement is made following expiration of the specified period of time." Collier on Bankruptcy, ¶ 9006.06[3] (16th ed.). As the bar date ran before Coyote

---

[3] None of the excepted provisions apply here. Although Rule 9006(b)(3) restricts the Court's authority to enlarge the time for filing a proof of claim or interest under Rule 3002(c), that rule only applies in chapter 7, 12, and 13 cases.

Cabling filed the motion, it must demonstrate "cause" and "excusable neglect" to obtain the requested relief.[4]

C.  Excusable Neglect.

"[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (internal quotation and citation omitted). Whether a late filing is attributable to excusable neglect is an "equitable inquiry," requiring a court to "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.* at 389, 395.

To assist courts in this equitable inquiry, the *Pioneer* court adopted a four factor test, considering "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The Court will weigh the *Pioneer* factors.

1.  Prejudice to Debtors. Debtors advance three arguments that granting the motion would cause prejudice. First, they assert that their plan proposed to pay unsecured creditors the lesser of 100% of allowed claims or $10,500. Without the Coyote Cabling claim, Debtors can satisfy this requirement by paying $6,000 over time. If Coyote Cabling's claim is allowed, they

---

[4] Some courts equate "cause" with "excusable neglect." *See, e.g., Agribank v. Green*, 188 B.R. 982 (C.D. Ill. 1995) ("the Supreme Court found that 'excusable neglect' in Rule 9006(b)(1) defines the 'for cause shown' language in Rule 3003(c)(3)"); *In re Spenlinhauer*, 573 B.R. 343, 361 (Bankr. D. Mass. 2017) ("The law is unclear whether the 'for cause' standard set forth in Rule 3003(c)(3) is limited to instances of excusable neglect."). However, the Tenth Circuit recognizes a distinction between the two. *See In re Herd*, 840 F.2d 757, 758 n.2 (10th Cir. 1988) (in the context of Rule 3003, excusable neglect may be a factor in deciding whether cause exists).

will have to pay $10,500 over time. This argument must be overruled because it is based on the Coyote Cabling claim itself, rather than the *lateness* of the claim. Of course it would benefit Debtors to pay $6,000 rather than $10,500, but that is not the point of the *Pioneer* factor. If the problem with a late filed claim is the claim rather than the lateness, there is no *Pioneer* prejudice. *See, e.g., In re O'Brien Envt'l Energy, Inc.*, 188 F.3d 116, 126-127 (3d Cir. 1999) (citing *In re Papp Int'l, Inc.*, 189 B.R. 939, 945 (Bankr. D. Neb. 1995) (because debtor would have had to deal with the claim if it had been timely filed, there would be no prejudice simply because it is filed late).

Second, Debtors argue that they will be prejudiced by the accrual of attorney's costs and fees of objecting to and defending against Coyote's claim. Again, this goes to the claim itself, not its timeliness.

Third, Debtors argue that other unsecured creditors could be adversely affected if Coyote Cabling's claim is allowed. That may be true. However, the potential redistribution of money among creditors is not *Pioneer* prejudice. *In re Spring Ford Indus., Inc.*, 2003 WL 21494002, at *3 (Bankr. E.D. Penn.) (citing *O'Brien Envt'l Energy, Inc.*, 188 F.3d at 126); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006) (collecting cases supporting the proposition that reducing funds available to other creditors does not establish prejudice); *see also In re Eagle Bus Mfg.*, *Inc.*, 62 F.3d 730, 737 (5th Cir. 1995) ("Under *Pioneer*, the central inquiry is whether the *debtor* will be prejudiced.").

A significant due process concern overshadows Debtors' arguments: if the Court denied Coyote Cabling's motion, it would have a good argument that its claim against the Debtors should

not be discharged.[5] Because of that, the Court finds that granting the motion serves, rather than prejudices, Debtors' interests.

      2.      <u>Length and Impact of Delay on Judicial Proceedings</u>. Because there is no "bright-line rule governing…the [substantial] lateness of a claim," courts often consider the degree to which "the delay may disrupt the judicial administration of the case." *In re Enron Corp.*, 419 F.3d 115, 128 (2d Cir. 2005) (internal quotation and citation omitted). Coyote Cabling filed the motion twenty days after it got notice of the case. That delay is not significant. The delay between the bar date and February 12, 2020, is more substantial (almost six months), but it would not be fair to attribute the delay to Coyote Cabling, as it was without notice of the case or the bar date.

In any event, administration of the case was not delayed. Debtors' plan was confirmed two weeks after Coyote Cabling filed its motion. There has been delay in paying unsecured creditors under the plan, pending resolution of the Coyote Cabling motion and/or claim, but that cannot be blamed on Coyote Cabling. It moved as quickly as it could. Further, the delay in paying creditors does not harm Debtors.

      3.      <u>Reason for the Delay</u>. The delay was caused entirely by Coyote Cabling's lack of notice. This was neither Coyote Cabling nor the Debtors' fault. If blame is to be assigned, it must be laid at the feet of the U.S. Postal Service.

---

[5] A discharge without adequate notice could violate Coyote's Fifth Amendment due process rights. *See, e.g., In re Otero Co. Hosp. Assoc., Inc.*, 560 B.R. 551, 562 (Bankr. D.N.M. 2016) ("A creditor will, therefore, not be bound by the terms of a confirmed plan if such creditor was not given adequate notice of the confirmation hearing, the terms of the plan, or the bar date for filing claims."); *In re Unioil*, 948 F.2d 678, 683 (10th Cir. 1991) (same); *Reliable Elec. Co., Inc. v. Olson Const. Co.*, 726 F.2d 620, 623 (10th Cir. 1984) ("A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests.").

4. <u>Good Faith</u>. Like the Debtors, Coyote Cabling acted in good faith. Once it received notice of the bankruptcy case, Coyote Cabling promptly hired bankruptcy counsel and filed the motion.

On balance, the *Pioneer* factors weigh decidedly in favor of allowing Coyote Cabling to file a proof of claim.

D. <u>Cause</u>.

"Cause" is used in the Bankruptcy Code, *see, e.g.*, §§ 362(d)(1), 503(a), 707(a), and 1112(b)(1) and Bankruptcy Rules, *see, e.g.,* Rules 3003(c)(3) and 9006(b)(1), but is not defined. In general, however, "cause" imposes an obligation on the movant to show some justification for the relief requested. *See, e.g.,* Collier, ¶ 9006.06[2]; *In re Cripps*, 549 B.R. 836, 857 (W.D. Mich. 2016) (cause may be a "sufficient reason," "a reason for an action," or "a ground of a legal action"). "Because there is no clear definition of what constitutes 'cause,' discretionary relief…must be determined on a case by case basis." *In re Gindi*, 642 F.3d 865, 872 (10th Cir. 2011) (quoting *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir. 1987)).

Based on the finding of excusable neglect, the Court is satisfied there exists cause to grant the requested relief. *See, e.g., In re Standard Metals Corp.,* 48 B.R. 778, 786–87 (Bankr. D. Colo. 1985), aff'd 817 F.2d 625 (10th Cir. 1987) ("A violation of a creditor's constitutional rights would most certainly be cause for extension of the bar date"); *Herd*, 840 F.2d at 758 n.2 (the "cause" standard may be satisfied by showing delayed or deficient notice of the bar date); *In re First Magnus Fin. Corp.*, 415 B.R. 416, 422 (Bankr. D. Ariz. 2009) ("Insufficient notice of the bar date may be sufficient cause to extend the bar date.").

III.   CONCLUSION

Coyote Cabling has demonstrated cause and excusable neglect in support of its motion for permission to file a late claim. By a separate order, the Court will grant the motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 31, 2020

Copies to: counsel of record.